**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JOHN BEST**, | |
| Plaintiff, | |
| v. | Civil Action No. 22-06911 (ZNQ) (RLS) |
| | **OPINION** |
| **FORMER COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF CORECTIONS MARCUS O. HICKS, et al.**, | |
| Defendants. | |

**QURAISHI, District Judge**

Plaintiff John Best, a former inmate at South Woods State Prison in Bridgeton, New Jersey, brought this civil rights action under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 *et seq.* for alleged unconstitutional conduct of the defendants that began on December 7, 2020. (Am. Compl., ECF No. 36.)  Before the Court is Defendants Nathan Canion, Glendon Corson, John Tomlin, Ronald Elberston, Ronald Anderson, Joseph Elbeuf, Victor Tapia ("Corrections Officer Defendants") and Marcus Hicks, Keisha Fisher and John Powell's ("Policymaker Defendants") (collectively "Defendants") Motion for Partial Dismissal.  ("Defs.' Mot. to Dismiss" ECF No. 40.)  For the reasons set forth below, the Court will grant in part Defendants' Motion for Partial Dismissal of the Amended Complaint and dismiss Counts Three (part one), Four, Five, Six, Eight, and Nine.[1]

---

[1] Plaintiff numbered the last two counts of the Amended Complaint "Count VIII."  The Court will refer to the count labeled "N.J.S.A. 10:6-2 New Jersey Civil Rights Act" as Count Nine.

## I.  PROCEDURAL HISTORY

On November 30, 2022, Plaintiff, represented by counsel, initiated this action by filing a complaint.  (Compl., ECF No. 1.)  In the original complaint, Plaintiff asserted claims against thirty-one defendants, distinguishing between several classes of defendants, including "Corrections Officer Defendants" and "Policymaker Defendants" as well additional claims against Registered Nurse ("RN") D. Rosa, John Does 1–10, and ABC Entities 1–10, in their individual and official capacities.  (Compl., at 2.)   On April 17, 2023, Corrections Officer Defendants and Policymaker Defendants filed their first motion for partial dismissal.  (Defs.' Mot. for Partial Dismissal, ECF No. 12.)  On November 6, 2023, Judge Peter G. Sheridan granted a motion for partial dismissal of the complaint and granted Plaintiff leave to file an amended complaint in a manner consistent with the Opinion.  (Order, ECF No. 31.)  On March 18, 2024, Plaintiff filed his Amended Complaint.  (Am. Compl., ECF No. 36.)  This matter was reassigned to the undersigned on July 10, 2024. (Text Order, ECF No. 50.)

## II.  AMENDED COMPLAINT

For the purpose of determining Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts the following factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).   On December 7, 2020, Plaintiff was incarcerated at South Woods State Prison, serving a sentence for robbery.  (Am. Compl., ¶¶ 1, 31.)  Plaintiff was housed in a special needs unit because he suffers from mental illnesses of bipolar disorder, post-traumatic stress disorder, depression and anxiety.  (*Id.* ¶ 32.)  Corrections officers asked Plaintiff to share a cell with a convicted child molester prior to December 7, 2020.  (*Id.* ¶ 34.)  When

2

Plaintiff refused out of fear the child molester would beat him up, correctional staff required Plaintiff to undergo a psychological evaluation. (*Id.*, ¶¶ 33-34.) Based on the results of the psychological evaluation, a mental health professional determined Plaintiff should be placed in suicide watch/close custody housing unit. (*Id.,* ¶¶ 34, 35.) When Plaintiff moved into the close custody housing unit on December 7, 2020, he was placed naked in a cell, with a "suicide blanket." (*Id.*, ¶ 35.)

On or around December 7, 2020 at approximately 9:00 p.m., Plaintiff was awakened by commotion in the dark. (*Id.*, ¶¶ 40–41.) In an incident report written later, Sergeant Canion claimed there was a power outage, and Plaintiff refused to move to another cell, where they could observe him in the light. (*Id.*, ¶ 37.) Plaintiff did not refuse, and Sergeant Canion wrote a false incident report accusing Plaintiff of becoming belligerent and noncompliant, necessitating use of force. (*Id.*, ¶¶ 37-38.) Plaintiff put out his hands to be cuffed. (*Id.*, ¶ 43.) Either Sergeant Canion or Sergeant Corson said, "We're going to fuck you up." (*Id.*) Plaintiff laid prostrate by the door of his cell without refusing a command, waiting to be cuffed. (*Id.*, ¶ 44.) Plaintiff saw about six or seven officers suited up and lined up outside his cell door, including, upon information and belief, Officers Tomlin, Elbertson, Anderson, Elbeuf, Tapia, John Does and Sergeants Corson and Canion. (*Id.*, ¶¶ 45-46.) They entered his cell and attacked him without provocation. (*Id.*, ¶¶ 45-46.) An officer with a shield slammed it in Plaintiff's face. (*Id.*, ¶ 47.) Each one of the Corrections Officer Defendants kicked, punched, and twisted Plaintiff's arms and legs, while also yelling for Plaintiff to stop resisting, although Plaintiff did not resist. (*Id.*, ¶¶ 46-49.) Upon information and belief, there is surveillance footage of the alleged beating, corroborating Plaintiff's account of events, but he has been denied access to the footage. (*Id.*,

3

¶ 53.)  Either Sergeant Canion or Corson said "that's enough," and Plaintiff was cuffed and taken to the infirmary.[2]  (*Id.*, ¶¶ 51, 56–57.)  Plaintiff's face was bloody and bruised, with bones out of position.  (*Id.*, ¶ 52.)  He suffered permanent damage to his right eye, permanent headaches, fractures in his eye socket, cheek, and sinus bones. (*Id.*, ¶ 55.)  Upon arrival at the infirmary, the second shift nurse, Defendant RN D. Rosa, refused to treat Plaintiff and authorized his return to his cell.  (*Id.*, ¶ 56.)  Each of the Corrections Officer Defendants withheld medical care "by forcing him to sit in his cell unattended and injured prior to being seen by the next shift for the obvious severe injuries he had suffered when they beat him" and Plaintiff remained naked in his cell.  (*Id.*, ¶¶ 96, 101.)  This lasted for several hours.  (*Id.*, ¶ 98.)  When the third shift nurse saw Plaintiff, she immediately sent him to Inspira Medical Center for evaluation of internal hemorrhaging.  (*Id.*, ¶ 57.)

After Plaintiff filed a grievance, the internal affairs unit of the New Jersey Department of Corrections ("NJDOC") performed an investigation and took photographs of Plaintiff's injuries.  (*Id.*, ¶¶ 63–64.)  Plaintiff was not provided with a copy of the investigation report or its findings.  (*Id.*, ¶ 64.)  Further, Plaintiff accuses Sergeant Canion and Officers Tomlin, Elberston, Tapia and Anderson of writing false reports in an attempt to cover up the incident of excessive use of force and diminishing Plaintiff's ability to pursue a claim in the courts.  (*Id.,* ¶¶ 119-20.)  He further alleges all moving defendants mutually agreed to file false reports to hide their misconduct, prevent Plaintiff from proving his claim, and to hide the identities of the individuals

---

[2]  Plaintiff also alleged Correction Officer Defendants beat him and then failed to send him to the infirmary.  (Am. Compl. ¶ 112.)  The Court will assume Plaintiff is referring to the failure to return Plaintiff to the infirmary after the second shift nurse refused to treat him.

involved in the alleged beating. (Am. Compl., ¶¶ 121–146.) Jail authorities refused to respond to Plaintiff's counsel's letter requesting preservation of evidence and copies of jail records. (*Id.*, ¶¶ 134, 35.)

Plaintiff sets forth the following claims for relief against the Corrections Officer and/or Policymaker Defendants in the Amended Complaint: excessive force, in violation of the Eighth Amendment (Count One); failure to intervene in excessive use of force, in violation of the Eighth Amendment (Count Two), conditions of confinement/failure to provide medical attention, in violation of the Eighth Amendment (Count Three), retaliation, in violation of the First and Fourteenth Amendments (Count Four), conspiracy to deprive Plaintiff of his First Amendment right of access to the courts by filing false reports (Count Five), conspiracy to deprive Plaintiff of his First Amendment right of access to the courts by failing to identify defendants (Count Six), supervisory liability of the Policymaker Defendants under 42 U.S.C. § 1983 (Count Eight), and violation of the New Jersey Civil Rights Act ("NJCRA") (Count Nine). (*Id.*, ¶¶ 76–221.)

On May 1, 2024, the Corrections Officer and Policymaker Defendants moved to dismiss the federal and state civil rights claims in Counts Three, Four, Five, Six, Eight, and Nine of the Amended Complaint. (Defs.' Mot. to Dismiss, ECF No. 40.) Plaintiff opposed the motion in a brief filed on June 12, 2024. ("Pl.'s Opposition Br." ECF No. 43.) On July 1, 2024, Defendants filed a reply brief. ("Defs.' Reply Br." ECF No. 49.) Accordingly, the matter is ripe for determination.

## III. <u>MOTION TO DISMISS STANDARD</u>

Defendants filed a partial motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 560 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard" requires a plaintiff to allege "more than a sheer possibility that a defendant has acted unlawfully," but the standard "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal.*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' —'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a motion to dismiss, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

## IV.  <u>DISCUSSION</u>

Defendants contend Counts Three (parts one and two), Four, Five, Six, Eight, and Nine of the Amended Complaint fail to state a claim.  The Court addresses each claim in turn.

### A.  CONDITIONS OF CONFINEMENT CLAIMS

In Count Three, part one of the Amended Complaint, Plaintiff asserts claims under 42 U.S.C. § 1983, alleging the Corrections Officer Defendants, with malicious and punitive intent, violated the Eighth Amendment of the United States Constitution by confining Plaintiff naked in a suicide watch cell, with only a "suicide blanket."  (Am Compl., ¶¶ 35, 97.)  In Count Nine, Plaintiff alleges this conduct also violates the New Jersey Constitution, and he brings claims against Corrections Officer Defendants under the New Jersey Civil Rights Act ("NJCRA") N.J. Stat. Ann. 10:6-2 *et seq.*

Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  "[T]o establish a section 1983 claim, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law."  *Id.* (cleaned up).  Where a party asserts a constitutional claim under § 1983 and New Jersey's state-law analogue, the NJCRA, a court's § 1983 analysis applies equally to the NJCRA claim.  *Falcone v. Dickstein*, 92 F.4th 193, 206 (3d Cir.) *cert. denied sub nom. Murray-Nolan v. Rubin*, 144 S. Ct. 2560 (2024).  Therefore, the Court addresses the ¶ 1983 and NJCRA claims together.

The Eighth Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment and prohibits the infliction of "cruel and unusual punishments" on those

convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Gause v. Diguglielmo*, 339 F. Appx 132, 134 (3d Cir. 2009). The Constitution "does not mandate comfortable prisons," and only those deprivations denying "the minimal civilized measure of life's necessities," are sufficiently grave to form the basis of an Eighth Amendment violation. *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

"To make out an Eighth Amendment claim, the prisoner must show that the alleged deprivation was sufficiently serious and that the prison official acted with 'deliberate indifference to inmate health and safety.'" *Gause*, 339 F. Appx at 134 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "'[D]eliberate indifference' is 'the equivalent of recklessly disregarding [a] risk' of serious harm to the prisoner." *Id.* (quoting *Farmer*, 511 U.S. at 836).

Defendants argue that Plaintiff fails to state an Eighth Amendment conditions of confinement claim because Plaintiff does not allege a "substantial risk of serious harm" to his health from "being naked in a cell, with a blanket, while on suicide watch." (Defs.' Mot. to Dismiss Br. at 17, ECF No. 40-1.) Furthermore, Defendants contend Plaintiff fails to plead facts supporting the subjective component of an Eighth Amendment violation, their deliberate indifference to a serious risk of harm. (Defs.' Reply Br. at 3, ECF No. 49.) In opposition to dismissal, Plaintiff contends the denial of clothing was sufficiently serious because the deprivation of dignity, especially being kept naked after an assault, could have caused severe emotional harm. (Pl's Opp. Br. at 20-24, ECF No. 43-1.) Plaintiff then argues that because these Defendants intended to cause him emotional damage, his claim satisfies the subjective component. (*Id.* at 22.)

8

In their reply brief, Defendants assert Plaintiff's single-day deprivation of clothing with a "suicide blanket" after a mental health professional directed his placement in suicide watch status did not present an objectively serious risk of harm to Plaintiff. (Defs' Reply Br. at 3-4.) Defendants maintain Plaintiff cannot establish their deliberate indifference to his health and safety because they restricted access to items that could be used for suicide. (Defs' Reply Br. at 4.)

The Court agrees. Notably, with respect to Defendants' alleged deliberate indifference, Plaintiff alleges it was a mental health professional who performed Plaintiff's psychological evaluation and determined he should be on suicide watch. (Am. Compl., ¶¶ 34-35.) Plaintiff does not allege any facts that create a plausible inference it was the Corrections Officer Defendants, rather than the mental health professional, who determined Plaintiff should not have clothing, which he might use for self-harm, while on suicide watch. Likewise, the fact that Plaintiff was deprived of clothing during and after the alleged incident of excessive use of force does not create a reasonable inference of the Corrections Officer Defendants' malicious intent to punish Plaintiff. Plaintiff remained on suicide watch, which justified depriving him access to items he could use for self-harm. There are no facts alleged suggesting Plaintiff's mental health no longer required his observation on suicide watch.

Plaintiff also fails to plead facts satisfying the objective component of an Eighth Amendment conditions of confinement claim, that Corrections Officer Defendants subjected him to a substantial risk of serious harm or denied him a basic life necessity. The harm Plaintiff alleges was deprivation of clothing and loss of dignity. But Plaintiff acknowledges he was on suicide watch, and he was provided a "suicide blanket." He does not identify any "serious risk of harm" to his health, physical or mental, from being confined in a cell with only a blanket for a single day.

9

Without additional supporting facts, the Court is unable to infer that the deprivation of clothing was "sufficiently serious" to rise to the level of a constitutional violation.  Accordingly, Plaintiff fails to state an Eighth Amendment conditions of confinement claim under 42 U.S.C. § 1983 or the NJCRA against Corrections Officer Defendants.  These claims will be dismissed without prejudice.[3]

### B.  INADEQUATE MEDICAL CARE CLAIMS AGAINST CORRECTIONS OFFICER DEFENDANTS

Plaintiff brings a second claim in Count Three of the Amended Complaint (Count Three, part two.")  He alleges Corrections Officer Defendants denied him adequate medical care by forcing him to "sit in his cell unattended and injured prior to being seen by the next shift for the obviously severe injuries he had suffered . . . ."  (Am. Compl., ¶ 96.)  Corrections Officer Defendants argue Plaintiff fails to state an Eighth Amendment claim for denying him adequate medical care because medical care was provided by the third shift nurse.  (Defs.' Mot. to Dismiss Br. at 13-14.)  In opposition, Plaintiff contends because Defendants "knew that Plaintiff urgently needed medical care," they were deliberately indifferent to those needs by "allow[ing] him to stay in his cell naked [for hours] after Nurse Rosa sent him back" without treatment. (Pl's Opp. Br. at 25.)

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103–104

---

[3] In Counts Three, part one and Count Eight of the Amended Complaint, Plaintiff does not allege Policymaker Defendants were personally involved in his confinement, without clothing, in a suicide watch cell on December 7, 2020.

(1976). To state a claim of inadequate medical care in violation of the Eighth Amendment, an inmate must allege facts showing (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 106.

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A court may also determine the seriousness of the inmate's medical need by reference to the effect of denying a particular treatment. *Id.* A condition is serious if denial of a particular treatment would cause death, degeneration, or extreme pain. *Id.*

Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). For liability, the prison official must know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 836–37 (1994). A plaintiff, therefore, must allege and plead enough facts to allow the court to reasonably infer that the official was subjectively aware of a substantial risk of serious harm and that the official disregarded that risk. *Id.*

Deliberate indifference may be found in a variety of contexts, including where: (1) prison authorities deny reasonable requests for medical treatment; (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it; (3) necessary medical treatment is delayed for non-medical reasons; and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Pearson v. Prison Health Serv.*, 850 F.3d 526,

538 (3d Cir. 2017). Regardless of the context, a defendant must have a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 838. "[T]o state an adequate § 1983 claim," a plaintiff must "demonstrate personal involvement by . . . the defendants…." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

Plaintiff alleges the Corrections Officer Defendants left him in his cell with severe facial injuries, including displaced bones, for several hours without treatment or evaluation after the second shift nurse refused to assist him. Plaintiff adequately alleges the Corrections Officer Defendants delayed necessary medical care for a serious medical need by not seeking alternative medical care for Plaintiff for several hours after the second shift nurse refused to evaluate and treat him. The Court will deny Defendants' Motion to Dismiss Count Three, part two.

## C. INADEQUATE MEDICAL CARE CLAIMS AGAINST THE POLICYMAKER DEFENDANTS

In Count Eight of the Amended Complaint, Plaintiff seeks to hold Policymaker Defendants liable under 42 U.S.C. § 1983 and the NJCRA for deficiencies in supervising and training Corrections Officer Defendants in providing inmates with adequate medical care.

Supervisory liability for constitutional claims under § 1983 "cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are two potential avenues for supervisory liability under § 1983. *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). First, "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Second, supervisors "can be liable if they 'participated in violating plaintiff's

rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" *Id.*

For the first type of claim, "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207. To sufficiently allege knowledge and acquiescence, a plaintiff must provide facts suggesting that the defendant supervisor "had contemporaneous, personal knowledge of the alleged violations and acquiesced in it." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (cleaned up).

To hold a supervisor liable for an Eighth Amendment violation, the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and ultimately prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 330 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). Typically, plaintiffs allege supervisory liability by alleging the supervisor's awareness of a pattern of similar constitutional injuries and failure to respond to such misconduct. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001). To establish liability for failure to train, discipline or supervise, a plaintiff must show that policymakers were on actual or constructive notice that particular flaws in their training, discipline or supervision caused subordinate officials to violate citizens' constitutional rights, which generally requires knowledge of a prior pattern of similar incidents and circumstances. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)).

13

Plaintiff's allegations in support of the Policymakers' liability for Plaintiff's inadequate medical care are wholly conclusory. (Am. Compl., ¶¶ 163, 183-193, 207.) Plaintiff does not allege a pattern where corrections officers attempted to obtain medical care for an inmate but were ordered to return the inmate to his cell by medical staff. Likewise, Plaintiff has not identified a specific policy or training deficit that caused Corrections Officer Defendants to delay medical care for Plaintiff for several hours until the next shift of medical staff arrived. The Court will dismiss these claims against the Policymaker Defendants without prejudice.

### D. RETALIATION CLAIMS AGAINST CORRECTIONS OFFICER DEFENDANTS

In Count Four of the Amended Complaint, Plaintiff alleges Corrections Officer Defendants retaliated against him because he refused to share a cell with a convicted child molester. (Am. Compl., ¶¶ 109–116.) They retaliated by forcing him to remain naked in his cell on suicide watch, beating him, and failing to provide adequate medical care. (*Id.*)

Corrections Officer Defendants argue Plaintiff fails to state a First Amendment retaliation claim because refusal to bunk with another inmate is not constitutionally protected conduct. (Defs.' Mot. to Dismiss at 17-18.) They further argue Plaintiff fails to establish a causal connection between his refusal to bunk with another inmate and any adverse actions allegedly taken by them. (*Id.*)

In response, Plaintiff contends that he did not merely refuse to bunk with another inmate, "he did so out of terror that he would suffer harm at the hands of that particular cell mate." (Pl's Opp. Br. at 36.) He characterizes the refusal as a "request for safety," and that that is a type of constitutionally protected speech. (*Id.* at 36-37.) As to causation, he argues that one could

14

reasonably infer that because he was beaten "in the wake" of his request for safety, that "the beating was related to [his] request for safety." (*Id.* at 37.)

The elements of a First Amendment retaliation claim are: (1) the plaintiff engaged in constitutionally protected conduct; (2) the plaintiff suffered an adverse action at the hands of the defendants; and (3) the plaintiff's constitutionally protected conduct was a substantial or motivating factor in the adverse action by the defendants. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001)). An adverse action is one sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. *Id.* at 422, n. 6. *Id.* (cleaned up). The third element can be established by allegations of "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* at 424 (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Rauser*, 241 F.3d at 334).

Plaintiff satisfies the first element of a retaliation claim by alleging he engaged in constitutionally protected speech, refusing a request to share a cell with someone he feared, a complaint about a condition of confinement. *See Carter v. Owens*, 2017 WL 3107204, at *12 (finding speech criticizing prison conditions is conduct protected by the First Amendment to the extent that it is not contrary to legitimate penological concerns)). However, Plaintiff fails to allege supporting facts for his conclusion that communicating his fear of the proposed cellmate was a substantial or motivating factor for the adverse actions taken by Corrections Officer Defendants. Indeed, Plaintiff alleges Corrections Officer Defendants responded by sending him for a psychological evaluation, and it was a mental professional who recommended Plaintiff be placed

on suicide watch.  (Am. Compl. ¶¶ 33, 34.)  Plaintiff does not allege facts to reasonably infer a causal connection between the alleged beating on December 7, 2020, and his refusal to share a cell with someone he subjectively feared, nor do the facts alleged support a causal connection between his speech and the delay in providing him medical care after the second shift nurse refused to treat him.  Therefore, the Court will dismiss Count Four of the Amended Complaint without prejudice.

Plaintiff also alleges the Policymaker Defendants are liable for retaliation by the Correction Officer Defendants because they were aware of a pattern of retaliation by corrections officers throughout the NJDOC and failed to take remedial actions.  (Am. Compl., ¶ 188.)  The allegation of a pattern of similar conduct is conclusory.  Plaintiff does not allege specific incidents of retaliation for constitutionally protected conduct by corrections officers within the NJDOC to reasonably infer the Policymaker Defendants were on notice of the need to take action.  Moreover, supervisory officials cannot be liable under § 1983 for retaliation in violation of the First Amendment by their subordinates where Plaintiff fails to allege sufficient facts to establish a constitutional violation occurred.  *See Barkes v. First Corr. Med., Inc.*, 766 F.3d at 330 (holding a plaintiff must allege "the constitutional injury was caused by the failure to implement the supervisory procedure.")  Therefore, the Court will grant Defendants' motion to dismiss the First Amendment retaliation claims against the Policymaker Defendants without prejudice.

### E.  CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS RIGHT OF ACCESS TO COURTS

Defendants contend Plaintiff fails to state claims of conspiracy to deprive him of his right of access to courts under Counts Five, Six and Nine of the Amended Complaint.  (Defs.' Mot. to Dismiss at 14.)  In Count Five, Plaintiff alleges Corrections Officer Defendants conspired to file

16

false or inaccurate reports "for the express purpose of diminishing Plaintiff's ability to pursue a claim in the courts . . . . " (Am. Compl., ¶¶ 119-20.)  He alleges they came to a mutual agreement to file false or inaccurate reports to hide their misconduct and prevent Plaintiff from proving his claims.  (Am. Compl., ¶¶ 119-20, 123.)  In Count Six of the Amended Complaint, Plaintiff alleges Corrections Officer Defendants and Policymaker Defendants conspired to violate his First Amendment right of access to courts by refusing to identify all corrections officers involved in the December 7, 2020 incident, despite their knowledge of the identities of all involved.  (Am. Compl., ¶¶ 132-149.)  Plaintiff alleges authorities at South Woods State Prison failed to respond to a letter from Plaintiff's counsel seeking preservation of all evidence, and refused a letter request for a copy of Plaintiff's jail records.  (Am. Compl. ¶¶ 134-35.)  Plaintiff asserts this conduct constituted a conspiracy to prevent him for timely suing all individuals who took part in violating his constitutional rights.  (*Id.* ¶¶ 139-40.)

### 1. **FILING FALSE REPORTS TO DEPRIVE ACCESS TO COURTS**

Defendants argue Plaintiff failed to allege a violation of his right of access to courts in Count Five of the Amended Complaint  (Defs' Mot. to Dismiss at 15.)  Plaintiff failed to allege the false reports about the use of force and his medical care caused him to lose an opportunity to pursue non-frivolous claims.  (*Id.*)  In opposition, Plaintiff responds that he is not required to plead a complete loss of opportunity to bring his claim, it is enough to plead Defendants impeded his ability to bring the claim, limited his ability to pursue the claim fully, or diminished the value of the claim.  (Pl's Opp. Br. at 27, citing *Gibson v. Superintendent of New Jersey et al.*, 411 F.3d 427, 441-442 (3d Cir. 2005)).  Plaintiff submits it is obvious his excessive force claim is non-frivolous,

and Defendants' false reports make it more difficult for him to pursue this action.

In their reply brief, Defendants assert Plaintiff failed to allege an actual injury, and it is insufficient to allege a defendant's conduct made it harder for a plaintiff to prove his claim.  (Defs' Reply Br. at 5, citing *Monroe v. Beard*, 198 F.3d 205-06 (3d Cir. 2008).  Instead, Plaintiff must allege his claims may no longer be pursued.  (*Id.* at 6.)  Defendants argue Plaintiff has brought suit against eleven defendants, and the right of access to courts is not the right to ultimately succeed on his claims.  (*Id.*)

Plaintiff primarily relies on a Seventh Circuit case, *Vazquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995), to support his contention that he is not required to allege a lost opportunity to pursue a claim in order to state a First Amendment access to courts claim.  (Pl's Opp. Br. at 27.) *Vazquez* is not binding in the Third Circuit.  Plaintiff also cites to a Third Circuit case, *Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427 (3d Cir. 2005).

To begin, there are generally two categories of denial of access to courts claims. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).  The first category of claims involve "systemic official action [that] frustrates a plaintiff . . . in preparing and filing suits at the present time."  *Id.* at 413.  The essence of such a claim is denying a plaintiff the opportunity to litigate.  *Id.*  The object of such claims "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed."  *Id.*  "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Harbury*, 536 U.S. at 415.

The second category of claims involve official acts that "caused the loss or inadequate settlement of a meritorious case."  *Harbury*, 536 U.S. at 14.  This category includes, *inter alia*,

18

cases where a plaintiff alleges a cover up or the defendants' failure to investigate "rendered hollow [the plaintiff's] right to seek redress." *Id.* (quoting *Bell v. Milwaukee*, 746 F.2d 1205, 1261 (1984)). These cases look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* (cleaned up). The object of this type of claim is not judgment in another lawsuit, but "judgment in the access claim itself, in providing relief obtainable in no other suit in the future." "Where a plaintiff alleges . . . defendants' actions have cost him the opportunity to pursue a past legal claim, he must show (1) that he suffered an actual injury—that he lost a chance to pursue a nonfrivolous or arguable underlying claim and (2) that he has no remedy other than in the present denial of access suit. *Monroe v. Superintendent Coal Twp. SCI*, 597 F. App'x 109, 111 (3d Cir. 2015) (cleaned up.) "[T]he very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414-15.

Here, Plaintiff's reliance on *Gibson* is misplaced. In *Gibson*, the parties agreed the plaintiff's access to courts claim was backward-looking, based on lost litigation opportunities. *Gibson*, 411 F.3d at 442 (3d Cir. 2005). The first lost opportunity was Gibson's criminal trial, where failure to produce exculpatory evidence prevented him for mounting an effective defense. *Id.* at 442. His second lost litigation opportunity was the inability to pursue post-conviction relief that would have ended his incarceration sooner. *Id.* To the contrary, Plaintiff's access to courts claim in Count Five is forward-looking. Plaintiff is unable to allege a forward-looking denial of access to courts claim because he asserted his claims against Defendants in this action, which is ongoing and a remedy for the underlying claims against the Defendants remains viable. The Court

will grant Defendants' motion to dismiss Count Five of the Amended Complaint without prejudice.

**2.  FAILURE TO IDENTIFY ALL PROPER PARTIES TO DEPRIVE PLAINTIFF OF ACCESS TO COURTS**

Defendants submit Plaintiff has failed to state a claim of conspiracy (against all defendants) to deprive Plaintiff of his right of access to the courts by failing to identify all proper parties to the alleged misconduct of December 7, 2020.  (Defs' Mot. to Dismiss at 21.)  Defendants point out that Plaintiff did not identify to whom his counsel directed the preservation of evidence letters sent to South Woods State Prison and Bayside State Prison in August 2022.  (*Id.*)  Additionally, Plaintiff has identified six of the individuals involved in the alleged excessive force incident, and he does not allege any facts suggesting Defendants reached an agreement to hide the identities of any other individuals who were involved.  (*Id.* at 22.)

Plaintiff relies on *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280 (3d Cir. 2018) for the viability of his conspiracy to deny access to courts claim.  In that case, the Third Circuit held:

> Despite the unfortunate situation created for plaintiffs like Jutrowski who are unable to identify their attackers through no fault of their own, we hold that a plaintiff alleging that one or more officers engaged in unconstitutional conduct must establish the "personal involvement" of each named defendant to survive summary judgment and take that defendant to trial. Nonetheless, where a plaintiff adduces sufficient evidence of an after-the-fact conspiracy to cover up misconduct, even of an unidentified officer, he may be able to state a claim under § 1983 for the violation of a different constitutional right: the due process right of access to the courts.

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018).  The Third Circuit explained:

> A "conspiracy of silence" among officers is actionable as a § 1983 conspiracy because the coordinated officer conduct "impede[s] an individual's access to courts " and renders "hollow" a victim's right to redress in a court of law. *Vasquez v. Hernandez*, 60 F.3d 325, 328–29 (7th Cir. 1995) ("[W]hen police officers conceal or obscure

> important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged."); *see also Swiggett v. Upper Merion Twp.*, No. 08-2604, 2008 WL 4916039, at *4 (E.D. Pa. Nov. 17, 2008) ("[C]ourts have found that concealing a constitutional violation, including use of excessive force, does not amount to a separate constitutional violation unless the victim of the concealment was deprived of his right of access to the courts.").

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294–95 (3d Cir. 2018).

Plaintiff's situation is materially distinguishable from the facts in *Jutrowski*. Jutrowski was unable to identify any of his assailants in the alleged incident of excessive use of force because he could not see while he was face down on the pavement. *Id.* at 286. Because a plaintiff must establish the personal involvement of a defendant to state a claim for excessive force under § 1983, a plaintiff's inability to identify anyone who assaulted him would result in his loss of a remedy for his excessive force claim. Thus, Jutrowski was potentially able to establish the loss of a remedy for his underlying excessive force claim in support his denial of access to courts claim.

Here, Plaintiff knows the identity of five corrections officers who beat him, and he has the opportunity to discover the identity of additional John Doe officers who may have been involved through the formal discovery process. Indeed, Plaintiff alleged he was unable to obtain the internal affairs investigation report prior to formal discovery. Avenues remain for Plaintiff to discover the identity of additional officers involved in the December 7, 2020 incident. A potential remedy remains for Plaintiff's underlying claims. Therefore, the Court will grant Defendants' motion to

dismiss Count Six of the Amended Complaint without prejudice.

## V.    **CONCLUSION**

For the reasons above, the Court will grant the Corrections Officer and Policymaker Defendants' motions to dismiss Counts Three, part one, and Counts Four, Five, Six, Eight and Nine of the Amended Complaint.  The Court will deny Defendants' motion to dismiss Count Three, part two (Eighth Amendment and NJRCA Inadequate Medical Care claim against Corrections Officer Defendants).  An appropriate order follows.


Date: November 26, 2024


s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

22